IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 4:11 CR 3 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER RE: |
| -vs- | SENTENCING DISPARITY |
| Philip A. Cargnino, | JUDGE JACK ZOUHARY |
| Defendant. | |

This Order is in response to Defendant Cargnino's Sentencing Memorandum (Doc. 28) and Supplemental Sentencing Memorandum (Doc. 34), where Cargnino notes the issue of sentencing disparity among the three defendants in this case. Under 18 U.S.C. § 3553(a), "the district court's task is to 'impose a sentence sufficient, but not greater than necessary, to comply with the purposes' of the statutory sentencing scheme." *United States v. Presley*, 547 F.3d 625, 630 (6th Cir. 2008) (quoting Section 3553(a)). Among the factors to be considered in imposing such a sentence is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Sixth Circuit has emphasized that this particular factor is "'concerned with *national* disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct.'" *Presley*, 547 F.3d at 631 (citing *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007)) (emphasis added). Because Section 3553(a)(6) is not concerned with disparities between the sentences of co-defendants, this Court is not *required* to consider that type of disparity. *Id.* (internal citations omitted). This Court *may*, however, exercise its discretion and determine

Cargnino's sentence "in light of a co-defendant's sentence." *See id.* (citing *Simmons*, 501 F.3d at 623); *see also United States v. Williams*, 894 F.2d 208, 212–13 (6th Cir. 1990) (reversing due to an inconsistent application of an enhancement to co-conspirators); *United States v. Tzoc-Sierra*, 387 F.3d 978, 980–81 (9th Cir. 2004) (affirming departure for sentence disparity among co-defendants); *United States v. Parker*, 462 F.3d 273, 276 (3d Cir. 2006) ("[A] sentencing court may reasonably consider sentencing disparity of co-defendants in the application of [the Section 3553(a)] factors."). Indeed, many courts have done so.

For instance, the district court in *Presley* held that "[t]he most important consideration . . . in regard to the sentence imposed on [the defendant] is . . . the need to avoid an unwarranted disparity between his sentence and that imposed on [the co-defendant] with the agreement of the government." *United States v. Presley*, 2006 WL 3950257, *7 (6th Cir. 2008). The defendant and co-defendant in *Presley* were both involved in a large scale cocaine conspiracy involving hundreds of kilograms of cocaine and millions of dollars in cash. *Id.* at *8. Both were tried and convicted by the same jury, though a small portion of the evidence was found to be excludable by the Sixth Circuit as to the co-defendant. On remand, the district court was to review the overall evidentiary basis for the co-defendant's conviction to see if it could stand without the excluded evidence. *Id.* The government, however, chose not to re-evaluate its case and opted to enter into an agreement with the co-defendant that resulted in a significantly lower sentence; "a windfall in the words of the government." *Id.*

The district court concluded that "it would violate the spirit of the guidelines and be particularly inequitable for [the co-defendant] to receive a 96 month sentence and [the defendant] a 360 month sentence for the same conduct." *Id.* at *9. The Sixth Circuit affirmed, rejecting the government's argument that the defendant and co-defendant were dissimilar. Specifically, the court

held the district court did not abuse its discretion in finding the defendant's "prior [criminal] record was not so extensive as to support a substantial difference" between his sentence and that of the co-defendant. *Presley*, 547 F.3d at 632. The court also rejected the government's argument that the suppression of evidence weakened its case against the co-defendant, as the co-defendant was "just as culpable" as he was during the earlier stages of the prosecution. *Id.* at 631. The court concluded by noting that "any disparities between [the defendant] and [co-defendant] were not so great as to make consideration of [the co-defendant's] sentence unreasonable in determining [the defendant's] sentence." *Id.* at 632.

In this case, the Government seeks a marked disparity in sentences among the three conspirators involved in the fraud. Cargnino's co-conspirators, Sandwisch and Flaum, each entered into a plea agreement specifying an advisory Guidelines range of 6 to 12 months based on a total offense level of 10 and a criminal history category of I (Doc. 28 at 16). This Court recently sentenced each of them to five years probation with no prison time. Cargnino's agreement, on the other hand, contemplates a Guidelines range of 57 to 71 months, which will likely be reduced to 37 to 46 months upon the Government's 5K1.1 motion (Doc. 28 at 17).

According to Cargnino, the disparity results from the fact that he is being held responsible for a greater loss amount under the Guidelines, yet he is no more culpable than his two co-conspirators (Doc. 28 at 17). His higher loss amount reflects the reality that it took longer for him to enter into a plea agreement with the Government, due to Government delay, and that during that additional time, the Government received additional claims for restitution from defrauded golf courses. Moreover, he contends that the delay in reaching a plea agreement had nothing to do with his efforts to avoid accepting responsibility for his crime. Rather, the delay was caused by a conflict of interest that arose

3

with his previous counsel, who also represented co-conspirator Flaum (Doc. 28 at 17). Cargnino claims he "worked diligently" to resolve this case, but the loss amount kept growing at a significant pace (Doc. 28 at 18).

Cargnino argues there is really no difference in culpability between him and his co-conspirators, particularly Sandwisch. Cargnino was 50% owner and the deep pockets of Royal Links, investing nearly $3 million of his own money into the company. Sandwisch, however, was also 50% owner, and the one who first contacted Cargnino with what ended up being a fraudulent business venture. Sandwisch shared equal responsibility in all decision-making, and was just as culpable as Cargnino in allowing the fraudulent venture to continue. In fact, Cargnino's PSR states that all three defendants "made false material statements and misrepresentations" (Doc. 36 at 2). Cargnino also argues that Flaum shared in the culpability.

According to the PSR, there are similarities among the three defendants, but Cargnino "was the primary controlling principal in [Royal Link]," and the individual who directed Sandwisch and Flaum to engage "in an aggressive sales campaign . . . encourage leasing companies to purchase beverage caddies at greatly inflated prices and lease these caddies to said golf courses . . ." (Doc. 36 at 2). The PSR also asserts that Cargnino directed Flaum to prepare and sign the October 2004 letter, which is one of the key pieces of evidence in this case evidencing fraud. The PSR does concede that the letter was mailed with the "approval and authorization" of Sandwisch, which further supports Cargnino's argument that he is no more culpable than Sandwisch (Doc. 36 at 2).

Accordingly, the question for this Court is whether the difference in culpability between Cargnino and his co-conspirators requires a similar or harsher sentence for Cargnino. The sentencing hearing will likely shed more light, as the parties will be presenting witnesses and addressing the role of sentencing disparity in this case.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

July 26, 2012